## SNYDER *v.* SICKLES.

A Spanish grant of land situate in the district of St. Louis, made May 12, 1785, which this court, in *Stanford* v. *Taylor* (18 How. 409), decided did not, without a survey, attach to any specific tract, was in 1811 confirmed by the board of land commissioners. The first survey was made in 1834, but was not carried into patent, and on an application under the act of June 2, 1862 (12 Stat. 410), the Secretary of the Interior issued instructions for another survey. It was made, but he decided that no effect should be given to it, as it did not conform to the calls of the grant. In ejectment, the demanded premises being embraced by that survey, the plaintiff, who claimed under the grantee, offered in evidence it and one subsequently made by the surveyor of St. Louis County, Missouri, accompanied by proof that they conformed to the calls of the grant, and were identical. The evidence was excluded. *Held*, 1. That the survey, having been disapproved by the Secretary, has no binding effect, and that the question of its correctness was not for the determination of the jury. 2. That in the absence of a subsisting recognized survey, the grant not having been confirmed by ascertained boundaries specifically set forth in the order of the board, so that the tract can be located without a survey, the plaintiff cannot recover. 3. That the act of June 6, 1874 (18 Stat. part 3, 62), entitled " An Act to obviate the necessity of issuing patents for certain private land-claims in the State of Missouri, and for other purposes," applies only to cases where the party interested is by law entitled to a patent.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

*Mr. Montgomery Blair* and *Mr. Britton A. Hill* for the plaintiffs in error.

*Mr. Philip Phillips, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Titles to lands claimed by individuals in Louisiana at the time the province was ceded to the United States were in most cases incomplete, as the governor of the province never possessed the power to grant a patent. All he could do was to issue to the donee an instrument called a concession or order of survey, which never invested the party with a fee-simple title, from which it follows that the plaintiff in a suit to recover the land must prove that his claim had been confirmed under some act of Congress.

Complete titles, of which there were a few when the juris-

diction of the province was transferred, required no such confirmation, as they needed no other protection than that afforded by the third article of the treaty of cession. 8 Stat. 202; *United States* v. *Wiggins*, 14 Pet. 350. Incomplete titles required confirmation, and Congress passed the act of the 2d of March, 1805, to " ascertain and adjust titles and claims to land in the ceded territory." 2 Stat. 326.

Prior to the passage of that act, however, the province ceded by the treaty had been divided into two organized territories, and the fifth section of the act, to ascertain and adjust titles and claims to land therein, provided for the appointment of commissioners in each of those territories, to ascertain and adjudicate the rights of persons presenting such claims. Id. 283.

Such commissioners were required by the act providing for their appointment to lay their decisions before Congress, but a subsequent act provided that the decision of the commissioners, when in favor of the claimant, should be final against the United States. Id. 441.

Forty arpens of land in front by forty arpens in depth are claimed by the plaintiffs, and they allege that the tract is bounded on the west by the survey made for Charles Gratiot, assignee of Louis Robert, and that the tract claimed was surveyed April 10, 1865, for John F. Perry, assignee of Angelica Chauvin, under the order of the Commissioner of the General Land-Office, as directed by the Secretary of the Interior.

Service was made; and the defendants appeared, and filed an answer denying that the plaintiffs are entitled to the possession of the premises described in the petition. Subsequently the parties went to trial before the circuit justice and a jury, and the verdict and judgment were in favor of the defendants. Exceptions were filed by the plaintiffs, and they sued out the present writ of error and removed the cause into this court.

Possession by the defendants being impliedly admitted, the principal question is whether the evidence introduced or offered by the plaintiffs was sufficient to prove their alleged title to the premises. Enough appears to show that John F. Perry was the assignee of the original donee of the tract under the former sovereign, and that he, Aug. 26, 1806, presented the

concession for the same to the land commissioners for confirmation. From the concession, which bears date May 12, 1785, it appears that the acting governor conceded to the applicant forty arpens of land in front by forty arpens in depth, lengthwise the river called Des Peres, from north to south, bounded on one side by Louis Robert, and on the other by the royal domain. Evidence was introduced in support of the claim ; but the board rejected it, for the alleged cause that it appeared from the records in their possession that the concession had been revoked, and that a new one had been issued to another party.

Five years later, the claim came up again before the land commissioners ; and the record shows that the board confirmed the same to the assignee of the original donee for the whole amount of the claim, and entered an order that the same be surveyed conformable to his possession and at his expense. Pursuant to the requirement of the sixth section of the act, the commissioners also delivered to the party an instrument known as a confirmation certificate, stating the circumstances of the case, and that he is entitled to a patent for the tract of land therein designated, which certificate, the same section provides, shall be filed with the proper register or recorder within twelve months after date, and the record shows that it was duly issued and filed as required. Id. 441, sect. 6.

Beyond doubt, these proceedings were regular ; but it is a great mistake to suppose that the confirmation certificate, without more, entitled the party to a patent. Instead of that, the next section of the act provides that the tracts of land thus granted by the commissioners, unless previously surveyed, shall be surveyed at the expense of the parties, under the direction of the surveyor-general or officer acting as such, and that the officer making the survey shall transmit general and particular plats of the tracts to the proper register or recorder, and shall also transmit copies of the said plats to the Secretary of the Treasury. Id. 442, sect. 7. When those acts have been performed, then the closing regulation of sect. 6 of the same act comes into operation, which makes it the duty of the register or recorder to "issue a certificate in favor of the party, which certificate, being transmitted to the Secretary of the Treasury, shall entitle the party to a patent, to be issued in

like manner as is provided by law for the issuing of patents for public lands lying in other territories."

Certificates signed by the land commissioners were issued subsequent to the confirmation, but before the survey required to be made and transmitted to the register or recorder; but the patent certificate, so called, was required to be issued by the register or recorder, and could not lawfully be issued until the survey and plats had been made and duly transmitted to the register or recorder, as directed by the seventh section of the act.

Suffice it to say in that connection that no such subsisting survey or plat was ever made in this case, nor was any such ever transmitted to the register or recorder, nor did he register or recorder ever issue such a certificate to the party, nor is any thing of the kind pretended by the plaintiffs. They made no effort to prove any thing of the sort; but what they attempted to prove was that they had acquired a fee-simple title to the land by virtue of certain other proceedings under certain other acts of Congress, which, as they contend, dispenses with the necessity on their part of showing that they ever complied with the sixth and seventh sections of the act of Congress under which the claim in question was confirmed.

Argument to show that the plaintiffs had no sufficient title under the provisions of that act is unnecessary, as they admit that " no previous survey had been made by Spanish, French, or American authority."

Attempt was made by the plaintiffs to supply the omission and cure the defect in the instruments of title exhibited in the proceedings which followed the decree of confirmation and the issuing of the confirmation certificate, by the evidence, documentary and parol, offered at the trial before the court and jury. Besides the concession of the governor and the decree of confirmation already mentioned, the plaintiffs also offered in evidence to the jury the petition of the original donee, addressed to the governor, asking for the concession, and her deed conveying the same to her assignee, together with the petition of the assignee to the land commissioners praying for a confirmation of the tract to him as such assignee, which was followed, as before stated, by the decree of confirmation and the confir-

mation certificate.   Appended to the decree of confirmation is
the order that the tract be surveyed conformable to his posses-
sion, and they also offered in evidence the act obviating the
necessity of issuing patents for certain private land-claims, and
for other purposes.   18 Stat. 62.

Parol evidence was also offered by the plaintiffs tending to
show that they held all the title confirmed to the assignee of
the original donee; and in order to show that the land in ques-
tion formed part of the land confirmed, they offered in evidence
the concession to Louis Robert, by which the tract claimed by
the plaintiffs is bounded on one side, and the survey of that
tract by Antoine Soulard, Spanish surveyor-general of that part
of the province before the cession, and also the concession to
Charles Gratiot.

Seasonable objection to all this evidence was made by the
defendants, and it was excluded from the jury by the court, and
the plaintiffs excepted to the ruling.

During the trial the plaintiff introduced in evidence the let-
ter of the Secretary of the Interior to the Commissioner of the
General Land-Office, dated March 18, 1865, directing a second
survey of the tract to be made whenever the plaintiffs may
request, so that it is bounded on the one side by the land of
Louis Robert, which is one of the distinctive calls in the grant.
In the course of the letter the Secretary also remarked that
attention should be given to calls upon the river Des Peres, as
far as practicable, and added in the same connection, that if
the claimant causes the survey to be made and the tract pat-
ented upon land not granted to the original donee, it will be
his error and misfortune.   They also offered in evidence the
letter of the Commissioner of the General Land-Office, dated
March 24, 1865, addressed to the recorder of land-titles at St.
Louis, communicating those instructions; and that also was
admitted in evidence without objection.

Those documents having been admitted, the plaintiff then
offered in evidence the survey returned by William H. Cozzens,
on the 10th of April, 1865, in conformity with those instruc-
tions, together with the letter of the Secretary of the Interior
stating that the survey was made under the directions of the
claimants, and that upon examination it is found that it does

not conform to the calls of the grant required by the order of survey, and that the survey being upon land not granted, no effect will be given to it by the department. Due objection was made by the defendants to the admissibility of the evidence, and it was excluded by the court, and the plaintiffs excepted.

Failing in that, the plaintiffs then offered in evidence a survey of the tract made by the surveyor of St. Louis County, with oral testimony to show that the survey was identical with the one previously ruled out, and that the land confirmed to the assignee of the original donee was correctly located by that survey; all of which, on the objection of the defendants, was ruled out by the court, and the plaintiffs excepted to the ruling of the court.

Both parties resting, the court instructed the jury that the plaintiffs were not entitled to recover, and they excepted to the charge of the court.

Since the case was entered here, they have assigned for error the several rulings of the court excluding evidence which they offered to introduce at the trial, and the charge that the court gave to the jury that they were not entitled to recover.

Questions of difficulty remain to be examined and decided, in view of the exceptions, of which the following are the most important: 1. What would be the legal effect of the survey made under the supervision of the plaintiffs if it had never been disapproved by the Secretary of the Interior? 2. Was it competent for the Secretary of the Interior to disapprove the survey so made; and if so, to what extent did such disapproval affect the right or interest of the plaintiffs? 3. Irrespective of any survey, what is the legal operation of the concession as confirmed by the decree of the land commissioners? 4. Does it contain such metes and bounds that the Circuit Court can locate it without a survey and without the aid of parol evidence? 5. Suppose that question is determined in the negative, is it competent for the Circuit Court to admit parol evidence in an ejectment suit and submit the question of location in all its aspects to the determination of a jury? 6. Concede that there is no regular subsisting survey of the tract, what is the legal operation of the provision contained in the first sec-

tion of the act obviating the necessity of issuing patents in the private land-claims included within that enactment? Id.

Remarks to show that the survey in question never was recognized or approved either by the commissioner or the Secretary of the Interior may well be omitted, as nothing of the kind appears in the record, and it is certain to a demonstration that no steps were ever taken by the Land Department to carry it into effect. Nor is it necessary to add much to what already appears to show that it does not conform to the calls of the concession, as that plainly appears by the comparison of the survey with the terms employed by the governor in making the concession. Nor is it any proper answer to that objection to say that the survey was authorized by the Secretary of the Interior, as it clearly appears that it was made in utter disregard of his directions, and that it covers land granted to other donees and which is not embraced in the concession granted to the assignor of the party who presented the claim for confirmation.

Surveys of such claims might at one time be made, if the party applied to have it done, under the direction of the proper officers of the government, the condition being that the applicant should pay the expense or secure the same to the satisfaction of the Secretary of the Interior before the work was performed. 12 id. 410.

By that act the proper executive officers, at the request of the owner of the claim, might cause it to be surveyed; but they could not pass upon the title, nor give the survey any greater effect than *prima facie* evidence of the true location of the land. Such a survey was made in this case under the direction of the Secretary of the Interior; but there is nothing in that act to compel the Secretary of the Interior to approve the survey if he deemed it erroneous, or to give it any effect whatever if he disapproved of it for good reasons. His reasons for disapproving it have already been referred to, and need not be repeated; nor is it necessary to enter into any discussion of the reasons assigned by the officer for rejecting the same, except to say that the reasons given are, in the judgment of the court, amply sufficient to sustain his action.

When first established, the land-office was made a bureau

in the Department of the Treasury. 2 id. 716. By the act to reorganize the land-office, it is enacted that the executive duties appertaining to the surveys and sale of the public lands, &c., shall be subject to the supervision and control of the General Land-Office, under the direction of the President. 5 id. 107. Prior to the passage of that act, appeals were always allowed from the decision of the commissioner to the Secretary of the Treasury, as the head of the Treasury Department.

Sect. 2 of the act establishing the Interior Department provides that the Secretary of the Interior shall perform all the duties of supervision and appeal in relation to the land-office heretofore discharged by the Secretary of the Treasury. 9 id. 395.

Assume that the power of such supervision and appeal was vested in the Secretary of the Treasury prior to the passage of that act, and it would follow beyond controversy that the same power is now possessed by the Secretary of the Interior; but the suggestion in that regard is, that the act reorganizing the land-office left the Secretary of the Treasury no such power.

Duties of the kind, it must be admitted, were rightfully performed by the Secretary of the Treasury prior to the reorganization of the land-office, as the original act creating that bureau established the office in the Department of the Treasury, and placed the commissioner under the direction of the head of that department; nor does the latter act reorganizing the office make any substantial change in that regard, as the President still acted, as before, in matters belonging to the departments, through their respective heads, which in legal contemplation and practical effect gave the Secretary of the Treasury the same supervision over the doings of the commissioner as under the prior act establishing the land-office. *Patterson* v. *Tatum*, 3 Sawyer, 164. Documentary history, however, shows that the President, when the act reorganizing the land-office was presented to him for approval, entertained doubts whether the Secretary of the Treasury, if it became a law and went into operation, would be authorized to exercise the accustomed supervision over the official acts of the commissioner in respect to the public lands, and that he deemed the matter of sufficient

importance to ask the opinion of the Attorney-General upon the subject.

Prompt response to the request of the President was given by the Attorney-General, and in the course of his reply he adverted to the fact that the act creating the land-office made it a branch of the treasury, and he expressed the opinion in very decided terms that the commissioner, under the new law, would still be, as before, subject to the general superintendence of the President, acting through the head of the Treasury Department. 3 Op. Att'y-Gen. 137. But he suggested as a measure of precaution, that the President should, before approving the act, direct the Secretary of the Treasury that he should continue under its provisions to exercise the same supervisory power as theretofore over the business of the general land-office, which suggestion, it appears, was adopted by the President, and that the President issued such an order, bearing even date with his approval of that act. 2 Laws, Instructions, and Opinions, 104. See also the opinion of President Buchanan, 1 Lester, Land Laws, 681.

Throughout the entire period from the approval of that act to the passage of the act creating the Department of the Interior, the Secretary of the Treasury was accustomed to exercise that power, without question or challenge.

Viewed in the light of these suggestions, it is clear that the power since the passage of the last-named act is vested in the Secretary of the Interior. Conclusive support to that proposition is also found in two decisions of this court, where the precise point is distinctly ruled. *Magwire* v. *Tyler*, 1 Black, 195; s. c. 8 Wall. 661.

Four points were decided in the first case, as follows: 1. That surveys under such confirmations are, in regard to their correctness, within the jurisdiction of the commissioner, and that that officer has power to adjudge the question of accuracy preliminary to the issuing of a patent. 2. That the Secretary of the Interior has the power of supervision and appeal in all matters relating to the General Land-Office, and that that power is coextensive with the authority of the commissioner to adjudge. 3. That the Secretary, in the exercise of his supervisory powers, may lawfully set aside a survey made under a con-

firmed Spanish grant, and may order another to be made, and issue a patent upon it. 4. That where the construction of the acts of Congress defining the powers of the Secretary of the Interior is drawn in question in a State court, and the decision is against the title supported by the decision of the Secretary, this court has jurisdiction to revise the case.

Corresponding rules are adjudged to be correct in the second case, as appears from the following propositions : —

1. That the judicial tribunals, in the ordinary administration of justice, have no jurisdiction or power to deal with these incipient indefinite claims without survey or specific boundaries, either as to survey or fixing boundaries, but that such titles, until an authorized survey is made, attach to no land, nor can a court of justice ascertain its location or boundaries, as that power is reserved to the Executive Department. *Landes* v. *Brant*, 10 How. 370 ; *West* v. *Cochran*, 17 id. 414.

2. That tracts of land previously surveyed or confirmed according to the specific boundaries set forth in the concession need no further location, as the legal effect of the confirmation is to establish the right of the donee to the designated tract.

Cases of the kind, it was there admitted, do sometimes arise ; but the court held that where the claim has no certain limits, and the decree of confirmation carries along with it the condition that the land must be surveyed and severed from the public domain and the concessions of other parties, then in all such cases the title of the party attaches to no particular tract, and that the courts of justice have no power or authority in law to establish the boundaries or locate the concession, the rule being that that power is reserved to the appointed executive officers. *Stanford* v. *Taylor*, 18 id. 409; *Bissell* v. *Penrose*, 8 id. 334.

3. That the power to revise surveys of such claims was vested in the first instance in the commissioner, subject to appeal, under the act creating the Department of the Interior, to the secretary of that department, who might lawfully set aside such a survey ; and that the concession, when the survey was set aside by the secretary, remained before the court as it existed when confirmed without survey by the land commissioners. 9 Stat. 395.

Even a few observations will be sufficient to show what the legal effect of the concession as confirmed was, without a survey to locate the tract and define its boundaries. Commissioners to adjudicate such titles were duly appointed, and they were required, under the sixth section of the act, to transmit to the Secretary of the Treasury and to the surveyor-general of the district where the land lay, transcripts of their final decisions made in favor of each claimant, and also to deliver to the claimant the confirmation certificate, stating the circumstances of the case, and that he was entitled to a patent for the designated tract; and the further requirement was that the certificate should be filed with the recorder if the land lay in the district of Louisiana, and with the register of the land-office when the land lay in the Orleans territory.

In all cases where the tract of land confirmed by the land commissioners had not been previously surveyed, the seventh section of the act declared that the same should be surveyed under the direction of the surveyor-general, and that he should transmit general and particular plats of the tracts that were surveyed to the proper register or recorder, and also transmit copies of the same to the Secretary of the Treasury; the further enactment being that, when the confirmation certificates and plats were filed with the register or recorder, he should thereupon issue a patent certificate in favor of the claimant, which, when transmitted to the Secretary of the Treasury, entitled the party to a patent in like manner as patents are issued for lands acquired in other lawful ways. *West* v. *Cochran, supra.*

Survey was made in this case, as before explained; but it was disapproved by the Secretary of the Interior, and became a nullity, and of course the patent certificate could not be issued, and the rights of the claimant were never advanced beyond what he acquired by the concession, the confirmation by the land commissioners, and their certificate of confirmation.

Cases arise where the specific boundaries of the tract are set forth in the concession given to the original donee by the foreign government, in which cases it is well settled, as conceded in the authorities already cited, that the decree of confirma-

tion locates the tract without any necessity for a subsequent survey. *Alviso* v. *United States*, 8 Wall. 339 ; *Higueras* v. *United States*, 5 id. 827 ; *Bissell* v. *Penrose*, 8 How. 341.

Nothing of the kind, however, of any practical importance, is exhibited in the record before the court, nor is it necessary to enter into any extended discussion of the question, as it has already been expressly decided by this court, in a controversy founded upon the same concession. *Stanford* v. *Taylor*, *supra.* Stanford sued the defendant in ejectment, claiming title from the confirmee to the land in dispute under a concession granted by the governor to Angelica Chauvin, the tract consisting of forty arpens in front by forty arpens in depth along the river Des Peres from north to south, bounded on one side by the land of Louis Robert, and on the other by the royal domain. Due confirmation was shown, as in this case, and that the commissioners ordered in the decree that the land should be surveyed conformable to the possession by virtue of the concession. Survey was made, and the tract located west of the location of Louis Robert and on both sides of the river Des Peres, which location, as the plaintiff contended, was erroneous. What he insisted was that the location should have been made east of the tract of Louis Robert, and that that proposition was so plain on the face of the concession, that no survey was necessary to determine the matter, and he offered parol proof to prove his theory, but the court of original jurisdiction rejected the proof offered, and this court affirmed the judgment.

Three of the matters decided by the court in that case deserve to be noticed : 1. That when there is a specific tract of land confirmed according to ascertained boundaries, the title of the confirmee is complete. 2. That where the claim has no certain limits, the title attaches to no particular land, nor can a court of justice establish the boundaries. 3. That the uncertainty of the intended location and of the outboundary in the case is too manifest to require discussion to show that a public survey is required to attach the concession to any land.

Indefinite and vague as the terms of the concession are, not a doubt is entertained that the court decided correctly in that case ; and it is only necessary to add in this connection that the

court here now adopts that conclusion, and the reasons given in
its support.

Concede that, and no further argument is necessary to show
that it is not competent for the Circuit Court in such a case to
admit parol proof to establish the boundaries of such a conces-
sion, the rule being established by repeated decisions that the
concession in such case being indefinite, uncertain, and vague,
attaches to no particular tract, and that it must be surveyed
and located as required by the seventh section of the act under
which it was confirmed, before the party can be entitled to a
patent.   *Stanford* v. *Taylor, supra ; Maguire* v. *Tyler,* 8 Wall.
661.

Authority to appoint a surveyor of lands in that territory
was conferred by Congress, and it was made his duty to cause
to be surveyed the lands in the territory which have been or
may be hereafter confirmed, under the conditions therein pro-
vided.   3 Stat. 325.

Both parties opposed the survey in the case of *Stanford* v.
*Taylor* (*supra*) ; and the court having instructed the jury that it
did not include the land in controversy, directed the jury to re-
turn a verdict for the defendant.   Neither party claims that that
survey is of any validity ; and the second survey having been
disapproved by the Secretary of the Interior, it is clear to a
demonstration that the concession in question is without any
subsisting valid survey, and remains where it stood at the date
of confirmation, having never been advanced to the condition
where the owner of the same could claim either a patent or
patent certificate under the confirmation act.   2 Stat. 441.

Grant that, and still the inquiry arises, what is the legal
effect of the more recent act dispensing with the necessity of
issuing patents in the cases to which it applies ?   18 id. 62.

Taken alone, the first section grants, releases, and relin-
quishes to confirmees all of the right, title, and interest of the
United States in such confirmed lands, as fully and completely
as could be done by patents ; but the second section of the
same act provides that nothing contained in the first section
shall abridge, divest, impair, injure, or prejudice any valid right,
title, or interest of any person or persons in any part of the
lands mentioned in the first section.   Both sections must be

construed together; and when so construed, the court is of the opinion that it dispenses with the necessity of issuing patents for such lands in all cases where the party interested is by law entitled to a patent, and in no other cases.

Patents, therefore, are not required where the concession was made by specific boundaries, nor where the specific boundaries of the tract confirmed are specifically set forth in the decree of confirmation, or where the tract had been previously surveyed, as required by the decree of confirmation and the seventh section of the act providing for such confirmation.

Ample scope for the operation of the act in question is found in the several classes of cases mentioned, without extending its operation to cases where no right to a patent had been acquired and which could not in that manner be conferred, without holding that it repeals the standard land laws of the country, nor without doing great injustice to claimants by introducing confusion and uncertainty into the administration of the Land Department.

Nor is there a word in the act, when the two sections are construed together, to support the theory of the plaintiffs. Instead of that, the adoption of their theory would operate as a virtual repeal of the second section, which was doubtless inserted to guard against any such consequences as would flow from the act, if the theory of the plaintiffs should receive judicial sanction.

Constant pressure of business in the land-office occasioned great delays in issuing patents, even in cases where the applicant held regular patent certificates, as well as in cases where the muniment of title granted by the former government gave the boundaries of the concession, or where the proper location and description of the tract was made certain by the decree of confirmation; and it was to remedy that grievance that the act under consideration was passed, for the purpose of dispensing with the necessity of issuing patents in certain cases.

Persons entitled to patents may, under that act, possess and enjoy their right to the land by virtue of the act without a patent; but the act does not dispense with a survey, made necessary by the act under which the confirmation was decreed, in order to entitle the party to a patent. Nor does it repeal

the seventh section of the prior act which creates that necessity.   Nor would it ultimately benefit the plaintiffs if the act dispensing with the issuing of patents could be construed, as they contend it should be, unless it could be held to supply monuments or boundaries where they are not given in the foreign concession, as the difficulty would still remain that the description of the tract as given in the concession is too vague, indefinite, and uncertain, to afford the means of location without an authentic survey.

Even construed as they would have the act, still the fact would remain, that the only guide for its identity is the description given in the concession, which is, that it is forty arpens of land in front by forty in depth, lengthwise the river Dès Peres from north to south, bounded on one side by the land of Louis Robert and on the other by the royal domain. Nothing definite is stated to show where any of the lines begin or end.   As given, one boundary is by Louis Robert, but it is not stated on which side, nor is any point of beginning given to enable the court to determine where it bounds on the royal domain ; nor is any thing set forth in the description to enable the court to determine where it begins or ends on the river, except what may be inferred from the phrase " from north to south."

Sufficient appears to show that the tract cannot be located without a survey or without the aid of extrinsic proof, which certainly cannot be admitted while the act of Congress requiring the survey remains in full force.   These difficulties in the way of the plaintiffs are insuperable ; nor would a patent remove them without a survey, as the concession would still be vague, indefinite, and uncertain, and incapable of location until the party in some way should procure an authentic survey.

Such a survey being necessary to the location of the claim, and the antecedent surveys having been rejected, the question will doubtless arise whether a new one may or may not be ordered, which is not determined by the present opinion, and which it is the intention of the court to leave entirely open.

For these reasons, the court is of the opinion that there is no error in the record.

*Judgment affirmed.*