MURPHY et al. v. TANNER et al.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1910.)

No. 2,986.

PUBLIC LANDS (§ 25*)—BOUNDARIES—CONCLUSIVENESS OF SURVEY.

 In an action of ejectment by one having title by patent from the United States against a mere homestead claimant, it is not competent for the latter to attack the correctness of a United States government survey of the land in controversy.

 [Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 25.*]

In Error to the Circuit Court of the United States for the District of Minnesota.

Action by William A. Murphy and others, as executors and trustees under the will of Simon J. Murphy, deceased, and others, against Malinda Tanner and Michael Cronin. Judgment for defendants, and plaintiffs bring error. Reversed in part.

This is an action of ejectment commenced in the United States Circuit Court for the District of Minnesota, to recover the possession of certain land described in the complaint and claimed to be a part of lots 1 and 2, in the southeast quarter of section 34, township 58 north, range 17 west, and of lots 1 and 2 of section 3, township 57 north, range 17 west. A jury being waived, the trial was by the court, and judgment was entered for the defendants. Plaintiffs thereupon sued out this writ of error to review that judgment. The following facts, among others, were found by the trial court:

In 1876 township 57 north of range 17 west, St. Louis county, Minn., was ordered by the General Land Office of the United States to be surveyed, and a contract for the survey thereof was made by the United States Surveyor General of the State of Minnesota with one Henry S. Howe, who, by said contract, was constituted a deputy United States surveyor for said purpose. Under said contract, said Howe was required, and undertook and agreed, to survey said township, to run all section lines, and to set posts marking all sections and quarter section corners, throughout said township where the same could be marked, and accurately to meander and establish upon the ground meander posts of all lakes and streams found to exist within said township. That under said contract, said Howe ran and marked on the ground the exterior lines of said township and located and established by the setting of corner posts and the marking of bearing or witness trees, all section and quarter section corners on said exterior lines as described in his field notes, except on the south line of said township, which line had been previously surveyed; and he marked the northwest corner of section 36, and also set a meander post and witness tree on the north line of the township, where such line running west from the northeast corner of said township encounters the east shore of Cedar Island Lake. But that said Howe did not survey the interior of said township, or establish upon the ground any corners, monuments, or lines in the interior of said township, or establish on the ground any meander post on said Cedar Island Lake other than the one above described, or mark any bearing tree therefor, other than the northwest corner of section 36. That said Howe made and filed with the Surveyor General what purported to be field notes of his survey, giving the length and direction of all section and meander lines, the location of all section and quarter section and meander corners and bearing trees, the character of the soil and timber, and all the other data required by the United States Statutes and the rules of the General Land Office.

Said field notes were approved August 7, 1876, and thereafter a plat was prepared in the Surveyor General's office showing the township as described in said field notes, a certified copy of this plat was filed in the Land Office

at Duluth, August 24. 1876, and another certified copy filed in the General Land Office August 23, 1876, and said plat was duly approved by the Commissioner of the General Land Office. Said field notes, with the exception of the description of the establishment of monument, and witness trees on the east, north, and west exterior lines of the township, and of said northwest corner of section 36 and the meander posts on the east side of said Cedar Island Lake, were not based upon any personal knowledge or inspection of the interior of said township, or upon any actual survey thereof, and were entirely fictitious and fraudulent. In said township there existed at said time, and still exists, numerous lakes of large size, of a deep and permanent character, at least three of which are from a mile and half to two miles in length, with sharply defined, wooded banks, which would be crossed by the section lines described by said Howe in his field notes, none of which lakes are referred to or purported to be' meandered or described in said field notes ; and said field notes were in fact with the aforesaid exceptions false and fraudulent. According to said Howe field notes and said plat, Cedar Island Lake existed in the northerly part of said township in sections 2, 3, 4, 9, 10, and 11 ; but said lake had in fact an area much smaller than represented in said field notes and plat. The land lying between the actual shore of said lake and the pretended meander thereof appeared as water on said plat. At the time of the said Howe survey and ever since said land was high and rolling, covered with a heavy growth of timber down to the edge of said lake, and the soil was well adapted to agricultural purposes, and said lake was and is a deep, permanent body of water, having steep banks except about the outlet. The said pretended meander line of said lake described by Howe in his field notes and in said plat did not approach the actual water line of said lake, nor truly conform to or delimit the same in any respect except where said line encountered the north line of said township, where the same crosses an arm of said lake, which arm projects into township 58 on the east side of the lake at the meander post on the east side thereof. The land in controversy in this action is a portion of said land in section 3, lying between said pretended meander line and the true shore of said lake. By the field notes and plat of the said Howe survey, it appears that at the points where the section lines and the town line intersect the shores of said lake meander posts were established, and the distances between such meander posts and the nearest section or quarter section corners on the same section or town lines is also stated in said field notes and shown upon the plat; whereas, in truth and in fact no such meander posts except the one on the east side of said Cedar Island Lake were ever established, nor were such distances in fact measured.

In 1878 township 58 north, range 17 west, St. Louis county, Minn., was surveyed by Frank N. Howe, deputy United States surveyor, and said survey was duly approved and the official plat accepted and filed in the Land Office at Duluth and in the General Land Office at Washington, D. C. That the field notes of said Frank N. Howe, on said survey as to the south township line of said 58—17, correspond and agree with the field notes of said Henry S. Howe in his survey of 57—17 as to all the section and quarter corners on the north township line of 57—17, the pretended meander corner 25 links east of the quarter corner on the north line of section 3, 57—17, and the meander posts on the east side of Cedar Island Lake. Between December, 1879, and March, 1887, all of the government lots in said township 57—17, shown upon the said plat of the said Henry S. Howe survey, were patented by the United States pursuant to the laws relating to the disposal of public land. All of said patents contained, after the description, the following clause usual in such patents:

"According to the official plat of the survey of the said land returned to the General Land Office by the Surveyor General."

In 1893, the settlers who settled upon the lands lying between the true shore of Cedar Island Lake and the said Henry S. Howe pretended meander line petitioned the government to survey said land, claiming it was unsurveyed government domain. Such petition was finally acted upon favorably. Pursuant to such determination, a hearing was had before the Surveyor General of Minnesota June 13. 1895, and his report, dated June 21, 1895, that said land was unsurveyed, was confirmed by the Secretary of the Interior, and

said land was then ordered by the Commissioner of the General Land Office to be surveyed. The plaintiffs in this action thereupon brought an action for injunction against the Surveyor General and deputy surveyor to restrain them from making such survey, claiming to be the owners of said land under patents from the United States, and an injunction was granted by the trial court. but the Supreme Court on April 6, 1903, held that such injunction would not lie. 189 U. S. 35, 23 Sup. Ct. 599, 47 L. Ed. 698.

After said decision of the Supreme Court of the United States had been rendered, one Edward L. Faison, an examiner of surveys in the Land Department of the United States, was duly authorized and instructed by the Commissioner of the General Land Office to survey, establish, and permanently mark on the ground the meander corners and the meander line of said Cedar Island Lake as described in the field notes of the survey of said Henry S. Howe, and as delineated upon the official plat of said survey, which meander line was described by said commissioner as the "Old Meander Boundary" between patented lands of the United States and unpatented public land to be surveyed by said Faison. Pursuant to said authority and instructions, said Faison surveyed and marked upon the ground a line which he designated as the "Old Meander Boundary of Cedar Island Lake" as described as aforesaid by the said Henry S. Howe, and surveyed all of the land lying between the said meander boundary as the same was marked upon the ground by said Faison and the actual water line of said Cedar Island Lake, and duly made return and filed field notes of such meander line and survey, which were thereafter duly approved by the proper land officials of the United States. A plat of said survey was thereafter duly made, approved, and filed in the office of the Commissioner of the General Land Office, the Surveyor General of the State of Minnesota, and the United States Land Office at Duluth, Minn. Said survey is known as the "Faison survey."

After the making of said Faison survey as aforesaid, protests against the approval thereof and of said plat were filed in the General Land Office of the United States, and a hearing thereon was duly had before the Commissioner of the General Land Office. Said protests were thereafter overruled by said commissioner, and said survey and said plat thereof were approved. Thereafter the defendant Tanner and others petitioned the Commissioner of the General Land Office of the United States to have surveyed a strip of government land in said township 57 north, range 17 west, lying between the Faison meander line as located by him on the ground and the true location of the Henry S. Howe pretended meander line, if correctly located on the ground, alleging and claiming that said Faison had not correctly located said line, and that there was a strip of government land still unsurveyed between the meander line as located on the ground by Faison and the said Howe pretended meander line, if correctly located on the ground, and which, if correctly located, would be the southern boundary line of plaintiffs' lots. This application was on the 28th day of November, 1905, refused by said commissioner. Thereupon the said applicants appealed from said decision of the Commissioner to the Secretary of the Interior, and the said secretary on the 25th day of October, 1906, affirmed the said decision of the Commissioner of November 28, 1905. That thereafter the said applicants filed a motion for review of the said decision of October 25, 1906, affirming the decision last aforesaid, which motion for review was on the 28th day of February, 1907, denied by the Secretary of the Interior. That thereafter another motion for review was made which was also denied by the said Secretary of the Interior. Thereafter said defendant Tanner filed with the Secretary of the Interior a petition for an order to set aside the survey made by said Faison as aforesaid for the purpose of including in a survey of said public lands certain land alleged by said petitioner to lie northerly of the meander boundary established by said Faison in sections 3 and 4 of township 57 north of range 17 west. Said petition, after due hearing and consideration, was denied by the Secretary of the Interior by decision dated December 13, 1907. That the plaintiffs are not the owners of or entitled to the possession of the tract of land described in the complaint by reason of being the owners of the government lots heretofore described.

There are other findings of the trial court in the record based upon the evidence introduced by the defendant in error Tanner, for the purpose of impeaching the integrity of the Faison survey, which, for reasons to be hereafter stated, will not be set forth.

M. H. Stanford, for plaintiffs in error.

J. B. Middlecoff, for defendant in error Tanner.

John R. Vanderlip (George P. Wilson, R. R. Briggs, and A. L. Agatin, on the brief), for defendant in error Cronin.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge (after stating the facts as above). The plaintiffs in error, by reason of being the undisputed owners of the original government lots described in the statement of facts above set forth, claim that their ownership of such lots extend to and are bounded on the southerly side by the shore of Cedar Island Lake. It is conceded that these lots were patented by the government of the United States, and that the respective parcels of land were in the respective patents described as "according to the official plat of the survey of said lands returned to the General Land Office by the Surveyor General." It is also admitted that the respective government plats of said townships represented said lots as bordering on said lake as a boundary, and that said plats were in accordance with the field notes of the respective surveys of said townships returned to the General Land Office by the Surveyor General. It is also admitted that the meander line of said lake, as shown by said plats and field notes, is not coincident with the actual shore of said lake, and that a considerable amount of high rolling land exists between the actual shore of said lake and the meander line thereof as shown by said plat and field notes. The defendants in error, Tanner and Cronin, are homestead settlers upon the land, possession of which is asked in this action by plaintiffs in error. Defendant in error Cronin does not make claim to any land lying north of the Howe meander line as established by Faison. Therefore, in the view which we take of the case, the judgment of the trial court as to him will be affirmed. Defendant in error Tanner claims land lying north of the Howe meander line as established by Faison on the theory that Faison did not establish the Howe meander line correctly according to the field notes and the plat of survey. The trial court held that plaintiffs in error were entitled only to the number of acres called for in the patent for the government lots hereinbefore mentioned. It, therefore, not only refused plaintiffs in error the right to go to the lake for the southern boundary of their lots, but also refused to let them go to the Howe meander line as established by Faison. The question presented for decision therefore is: Where is the southern boundary line of the government lots in question? Is said line the actual shore of Cedar Island Lake, or is said line the meander boundary line of. Howe established upon the ground by Edward L. Faison, or is it a proportional line which would give plaintiffs in error the number of acres mentioned in the patents for the government lots hereinbefore described?

In view of the decision of the Supreme Court of the United States in the case of Security Land & Exploration Company v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662, we think the claim of the plaintiffs in error that they are entitled to go to the shore of the lake for the southern boundary must be denied. It is true that some of the land now in controversy is nearer the lake than was the land involved in the case cited; but, in view of the conceded fact that the Howe survey and the plat thereof was fraudulent and fictitious so far as the lake is concerned, we do not see how any legal right can be based thereon. We, therefore, upon the authority and reasoning of the Burns Case, hold that plaintiffs in error are not entitled to go to the lake for their southern boundary. While the Supreme Court in the case cited decided that the lake could not be held to be a natural boundary and that the meander line of Howe was not a true meander line, it did decide that the meander line should be considered as a boundary line and not a meander line. At the time of the decision of the Supreme Court in the Burns Case, the Faison survey was not before that court, if, indeed, it had been made at that time. It appears, however, from the facts found, that in 1893 settlers who had settled upon the land lying between the true shore line of Cedar Island Lake and the pretended meander line of Howe petitioned the government of the United States to survey said land claiming the same to be unsurveyed government domain. Such petition was finally acted upon favorably. Pursuant to such determination, a hearing was had before the Surveyor General of Minnesota June 13, 1895, and his report, dated June 21, 1895, that said land was unsurveyed, was confirmed by the Secretary of the Interior, and said land was then ordered to be surveyed by the Commissioner of the General Land Office. That subsequently one Edward L. Faison, an examiner of surveys in the Land Department of the United States, was duly authorized and instructed by the Commissioner of the General Land Office to survey, establish, and permanently mark on the ground the meander corners and the meander line of Cedar Island Lake as described in the field notes of the survey of Henry S. Howe, and as delineated upon the official plat of said survey, which meander line was described by said commissioner as the "Old Meander Boundary" between patented lands of the United States and unpatented public lands, to be surveyed by said Faison. Pursuant to said authority and instructions, said Faison surveyed and marked upon the ground a line which he designated as the "Old Meander Boundary" of Cedar Island Lake as described by Henry S. Howe, and surveyed all of the land lying between the said meander boundary as the same was marked upon the ground by said Faison and the actual water line of said Cedar Island Lake and duly made return and filed field notes of such meander line and survey which were thereafter duly approved by the proper land officials of the United States, and a plat of said survey was also thereafter duly made, approved, and filed in the office of the Commissioner of the General Land Office, the Surveyor General of Minnesota, and the United States Land Office at Duluth. It also appears from the findings of fact made by the trial court that, ever since the Faison survey was made, it has been attacked by parties interested, including the defendant in error Tanner, before the De-

partment of the Interior, charged by law with the survey and disposal of the public lands of the United States, and that department has down to the present time consistently refused to set aside or disturb the same.

It seems beyond question to have been the intention of the Department of the Interior, in ordering the so-called "Faison survey," to finally locate a line which should ever thereafter be the boundary between the patented and unpatented lands of the United States in said township. It was a proceeding to locate upon the ground the meander boundary line of Howe which the Supreme Court decided in the Burns Case should be considered as a boundary and not a meander line. Having located this line upon the ground, the United States, through the department having charge of the survey and disposal of the public lands, has finally accepted the same as the true boundary. The defendant in error Tanner, a mere homestead settler upon the public lands of the United States, seeks in this action to overthrow the meander boundary line established by Faison by showing the incorrectness of the same as a survey. There are strong and controlling reasons why she should not be permitted to do this. The United States, through the Department of the Interior, has decided that there are no public lands of the United States in the township in question north of the Faison meander boundary line. Tanner owns no land affected by the Faison survey and may never obtain title from the Government to the land upon which she resides. The title to the land, conceding all that she claims, is still in the United States. Until the United States has finally disposed of this land, the courts have no right to question the correctness of the government survey; on the contrary, the courts ought, so far as possible, to work in harmony so far as surveys are concerned with the General Land Office. We believe, under the circumstances surrounding this case, that it was not competent for the trial court to enter upon an inquiry as to the validity and correctness of the Faison survey as a survey.

The trial court disclaimed any intention of so doing; but, in allowing defendant in error Tanner to claim land north of the Faison meander boundary line, it in effect abolished the Faison line as a boundary, which we do not think it was permitted to do.

In Kirwan v. Murphy, 189 U. S. 53, 23 Sup. Ct. 603 (47 L. Ed. 698), which was an attempt by the plaintiff in error to enjoin Kirwan, as United States Surveyor General for the District of Minnesota, from making a survey of the land in controversy, the Supreme Court of the United States said:

"The Land Department must necessarily consider and determine what are public lands, what lands have been surveyed, what are to be surveyed, what have been disposed of, what remain to be disposed of, and what are reserved."

Again in the same case, at page 54 of 189 U. S., at page 603 of 23 Sup. Ct. (47 L. Ed. 698), the Supreme Court said:

"The courts can neither correct nor make surveys. The power to do so is reposed in the political department of the government, and the Land Department charged with the duty of surveying the public domain must primarily determine what are public lands, subject to survey and disposal under the public land laws. Possessed of the power in general, its exercise of jurisdic-

tion cannot be questioned by the courts before it has taken final action. Brown v. Hitchcock, 173 U. S. 473 [19 Sup. Ct. 485, 43 L. Ed. 772]."

In Cragin v. Powell, 128 U. S. 698, 9 Sup. Ct. 206 [32 L. Ed. 566] the Supreme Court spoke as follows:

"That the power to make and correct surveys of the public lands belongs to the political department of the government, and that, whilst the lands are subject to the supervision of the General Land Office, the decisions of that bureau in all such cases, like that of other special tribunals upon matters within their exclusive jurisdiction, are unassailable by the courts, except by a direct proceeding, and that the latter have no concurrent or original power to make similar corrections, if not an elementary principle of our land law, is settled by such a mass of decisions of this court that its mere statement is sufficient. Steel v. Smelting Co., 106 U. S. 447, 454, 455 [1 Sup. Ct. 389, 27 L. Ed. 226], and cases cited in that opinion; United States v. San Jacinto Tin Co. [(C. C.) 23 Fed. 279], 10 Sawy. 639, affirmed in 125 U. S. 273 [8 Sup. Ct. 850, 31 L. Ed. 747]; United States v. Flint, 4 Sawy. 42 [Fed. Cas. No. 15,121], affirmed in United States v. Throckmorton, 98 U. S. 61 [25 L. Ed. 93]; Henshaw v. Bissell, 18 Wall. 255 [21 L. Ed. 835]; Stanford v. Taylor, 18 How. 409 [15 L. Ed. 453]; Haydel v. Dufresne, 17 How. 23 [15 L. Ed. 115]; West v. Cochran, 18 How. 403 [15 L. Ed. 110]; Jackson v. Clark, 1 Pet. 628 [7 L. Ed. 290]; Niswanger v. Saunders, 1 Wall. 424 [17 L. Ed. 599]; Snyder v. Sickles, 98 U. S. 203 [25 L. Ed. 97]; Frasher v. O'Connor, 115 U. S. 102 [5 Sup. Ct. 1141, 29 L. Ed. 311]; Gazzam v. Phillips, 20 How. 372 [15 L. Ed. 958]; Pollard v. Dwight, 4 Cranch, 421 [2 L. Ed. 666]; Taylor v. Brown, 5 Cranch, 234 [3 L. Ed. 88]; McIver v. Walker, 9 Cranch, 173, 177 [3 L. Ed. 694]; Craig v. Radford, 3 Wheat. 594 [4 L. Ed. 467]; and Ellicott v. Pearl, 10 Pet. 412 [9 L. Ed. 475]."

The reason of this rule, as stated by Justice Catron in the case of Haydel v. Dufresne is that:

"Great confusion and litigation would ensue if the judicial tribunals, state and federal, were permitted to interfere and overthrow the public surveys on no other ground than an opinion that they could have the work in the field better done and divisions more equitably made than the department of public lands could do."

The following are later cases in the Supreme Court of the United States declaring the same principle: Whitaker v. McBride, 197 U. S. 510, 25 Sup. Ct. 530, 49 L. Ed. 857; Stoneroad v. Stoneroad, 158 U. S. 240, 15 Sup. Ct. 822, 39 L. Ed. 966; Russell v. Maxwell Land Grant Co., 158 U. S. 253, 15 Sup. Ct. 827, 39 L. Ed. 971.

Upon the facts found by the trial court and the law applicable thereto as announced by the Supreme Court, we hold that the Faison meander boundary line is the southern boundary of plaintiffs' in error government lots, and that the trial court erred in restricting them to the number of acres called for in the patent, so far as the defendant in error Tanner is concerned.

We might reverse the case and order a new trial; but as the facts upon which the rights of the parties depend are all before us in the findings of the trial court, we will affirm the judgment of the trial court as to the defendant in error Cronin, and reverse said judgment as to the defendant in error Tanner, with directions to the trial court to enter judgment, upon the facts found, in favor of plaintiffs in error and against Tanner for the possession of so much of the land described in the complaint as lies north of the Faison meander boundary line, and it is so ordered.