## UNITED STATES v. REDONDO DEVELOPMENT CO.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1918.)

No. 5035.

1. BOUNDARIES ⬤⟿3(1)—SURVEYS—RULES FOR CONSTRUCTION.

The general rule of precedence of proofs for determining disputed boundaries is: First, natural monuments; second, artificial marks; third, courses and distances; and, last, recitals of quantity; but the rule is not imperative, and is adaptable to circumstances.

2. BOUNDARIES ⬤⟿3(9)—SURVEY—CALL FOR QUANTITY—ACREAGE.

Where persons entitled under a treaty to select certain lands out of the public domain undertook to locate nearly 100,000 acres of land, and the selection and location were made specifically to comprise that acreage, *held*, that the calls for quantity will prevail over the marks, etc., of contract surveyors employed by the Surveyor General; it being apparent from the field notes that such surveyors did not actually run the exterior lines of the location.

3. CONSTITUTIONAL LAW ⬤⟿68(1)—POLITICAL QUESTIONS—JUDICIAL POWER—SURVEYS.

The making and correction of surveys of public lands belong to the political department of the government, and the courts should not attempt to determine, in a suit by the United States against a patentee of public land, that a private survey is correct, though the court may adjudge a survey made to be incorrect.

4. PUBLIC LANDS ⬤⟿28—RESURVEYS.

The erroneous refusal of the Land Office to make a resurvey of a location of public lands based upon a misconception of the patentee's rights does not preclude a resurvey; the refusal not operating as a permanent bar.

Appeal from the District Court of the United States for the District of New Mexico; John C. Pollock, Judge.

Suit by the United States against the Redondo Development Company, which sought affirmative relief. From the decree, the United States appeals. Modified, and, as modified, affirmed.

J. O. Seth, Asst. U. S. Atty., of Santa Fé, N. M. (Summers Burkhart, U. S. Atty., of Albuquerque, N. M., on the brief), for the United States.

George S. Klock and Alonzo B. McMillen, both of Albuquerque, N. M., for appellee.

Before HOOK and CARLAND, Circuit Judges, and AMIDON, District Judge.

---

HOOK, Circuit Judge. This is a suit by the United States to enjoin the Redondo Development Company from fencing and cutting timber from a tract of land in New Mexico known as "Baca Location No. 1," outside the exterior boundaries thereof as established by the official government survey and marked upon the ground by the surveyors. The defendant affirmatively sought a judicial confirmation of its boundary claim. Upon final hearing the trial court held that the true boundaries were delineated in the field notes and plat of the survey officially reported, were not correctly marked upon the ground, and that the fencing of the defendant was upon the right lines. It dismissed the complaint of the government but retained jurisdiction of the cause for further orders if defendant was interfered with. The government appealed.

The Baca floats, locations, or grants as variously called, are five in number, and their history may be found in Shaw v. Kellogg, 170 U. S. 312, 18 Sup. Ct. 632, 42 L. Ed. 1050, involving No. 4, and Lane v. Watts, 234 U. S. 525, 34 Sup. Ct. 965, 58 L. Ed. 1440, and 235 U. S. 17, 35 Sup. Ct. 3, 59 L. Ed. 104, involving No. 3. See, also, Maese v. Herman, 183 U. S. 572, 22 Sup. Ct. 91, 46 L. Ed. 335. Only so much will be recited as is necessary to exhibit the present controversy. By Act June 21, 1860, c. 167, 12 Stat. 71, and proceedings under it, the heirs of Luis Maria Baca were entitled to select from the vacant, nonmineral, public lands in the then territory of New Mexico an aggregate of 496,446.90 acres in not more than five square tracts or bodies. In December, 1860, they made selection No. 1, to contain one-fifth of the quantity, or 99,289.39 acres, and located it by describing a point, definitely determinable by reference to section, township, and range of a distant government survey, "as a common center, and extending north, south, east, and west a sufficient distance to embrace the area last above mentioned, and that the boundaries of said location shall conform to the cardinal points of the compass." A few days later the surveyor general of New Mexico, being duly authorized, certified that he approved and had located the selection. His certificate recited the quantity and the description furnished by the heirs. The Commissioner of the General Land Office approved the selection. A survey was necessary to segregate the lands from the public domain. Lane v. Watts, supra.

In 1876 the Commissioner of the General Land Office directed the surveyor general to make survey in accordance with the selection and location. Following the practice which obtained in those days, the surveyor general contracted with a firm of surveyors to do the work, and in June, 1876, they returned field notes and plat showing a survey in exact accordance with the selection and location; that is to say, of a tract of land in square form containing the number of acres mentioned and with boundaries on the cardinal points of the compass equidistant from the center designated. The survey as reported was approved by the officials of the Department of the Interior. The lands in the location and the surrounding country were wild, mountainous, and principally in forest, unsettled in 1860 and ever since. In October, 1909, the defendant purchased the location, relying solely upon

the field notes and plat for its boundaries and contents. In proceeding to inclose it, it was discovered that the marks upon the ground of the survey of 1876 were grossly inaccurate. Defendant's petition for a resurvey was denied by the Commissioner of the General Land Office, and on appeal by the Secretary of the Interior. In 1910 it caused a private survey to be made on the lines shown by the field notes and plat of 1876, and commenced the erection of fences. This suit by the government followed.

The field notes and plat of the survey of 1876 conformed to the selection and location and embraced the quantity of land intended to be confirmed to the locators. But it clearly appears that the surveyors practiced a gross fraud in that part of their duty which consisted in marking the boundary lines upon the ground. A tracing of the lines according to such of their marks and monuments as could be found disclosed a shortage in the required area of nearly 10,000 acres. In very few, if any, instances were the marks and monuments at the places indicated in their report, and for long distances none whatever were found. It is quite apparent that a considerable part of the exterior lines was not traversed at all by the surveyors. They reported a completion of their work in about one-sixth of the time reasonably necessary for a faithful performance by the force they employed; their contract rate of compensation was by the mile. We think that their marking of the lines upon the ground was fully discredited. To sustain them it is necessary that the intent of the government and the Baca heirs and the field notes and plat reported by the surveyors be put aside. The case is not one of mere deviation from mathematical accuracy, but one in which a part of what is comprised in the term "survey" may be said not to have been performed.

[1, 2] The government contends that the tracks of the original surveyors so far as they are discoverable upon the ground must prevail over the calls and distances of the field notes and plat notwithstanding their apparent inaccuracy and the great discrepancy in the area. The general order of precedence of proofs for determining disputed boundaries gathered from the multitude of adjudicated cases is: First, natural monuments or objects, like mountains, lakes, and streams; second, artificial marks, stakes, or other objects, made or placed by the hand of man, as in this case; third, courses and distances in documents or writings prescribing or reporting the establishment of the lines; lastly, recitals of quantity. But the rule is not imperative. It proceeds upon considerations of the comparative certainty or fallibility of the evidences of the intention of the qualified authority, public or private, by which the boundary was prescribed. The rule is one of construction, and, like all such rules, it is not conclusive or final, but is adaptable to circumstances. The intention controls when it is clear and manifest from all its evidences. In Ainsa v. United States, 161 U. S. 208, 229, 16 Sup. Ct. 544, 552 (40 L. Ed. 673) it was said:

"So monuments control courses and distances, and courses and distances control quantity; but, where there is uncertainty in specific description, the quantity named may be of decisive weight, and necessarily so if the intention to convey only so much, and no more, is plain."

See, also, Ely's Adm'r v. United States, 171 U. S. 220, 234, 18 Sup. Ct. 840, 43 L. Ed. 142; Reloj Cattle Co. v. United States, 184 U. S. 624, 637, 22 Sup. Ct. 499, 46 L. Ed. 721; Conkling Mining Co. v. Mines Co., 144 C. C. A. 607, 230 Fed. 553.

A series of cases in this circuit involving a fraudulent government survey in Minnesota are particularly in point. The surveyor's report of the shores of a permanent lake as a boundary of surveyed tracts of land, officially approved and made of record, and upon which patents issued to innocent persons, was annulled years afterwards as fraudulent, and a correct survey was made by the government and judicially sustained. Security Land & Exploration Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662; Id., 87 Minn. 97, 91 N. W. 304, 63 L. R. A. 157, 94 Am. St. Rep. 684; Kirwan v. Murphy, 189 U. S. 35, 23 Sup. Ct. 599, 47 L. Ed. 698; Murphy v. Tanner, 100 C. C. A. 125, 176 Fed. 537. The call of the lake as a permanent natural monument for the boundary line gave way to distances and quantity. In the first of these cases the Supreme Court said:

"The rule as to natural monuments is not, however, absolute and inexorable. It is founded upon the presumed intention of the parties, to be gathered from the language contained in the grant, and upon the assumption that the description by monuments approaches accuracy within some reasonable distance, and places the monument somewhere near where it really exists."

Again:

"It seems plain that the intention was to convey no more than the number of acres actually surveyed and mentioned in the patents. In Ainsa v. United States, supra, this is deemed to be a very important and sometimes a decisive fact."

These rules may work both ways—in favor of or against the United States. They are applicable in a direct proceeding to which it is a party, and in which it is seeking to give effect to a fraudulent survey to the injury of a private person. A definite and very important feature of Baca location No. 1 was the area. It was to contain 99,289.39 acres of land. Quantity was a primary, not a secondary, consideration. Moreover, it was not a largess or bounty to the Baca heirs, but a right founded on treaty obligations recognized by Congress, which thereafter no officer or employé of the government could deny or impair. The selection and location were made specifically to comprise the designated area, and all the official actions of the Land Office, including the report of the survey and the approval of it, were in accord with the right of the locators. The only thing out of harmony with the manifest intention of both parties as regards the quantity and the lines necessary to embrace it was the fraudulent conduct of the surveyors, which did not appear in their report. In the very nature of things, when the survey was approved in 1876, the government officials acted upon the field notes and plat, which were fair on their face. They could not have known of the marks on the ground. We find nothing in the case warranting a holding that defendant and its predecessors in title acquiesced in the error or are estopped.

[3, 4] In effect, the decree of the trial court dismissed the govern-

ment's complaint, which was right; but it also permanently established defendant's private survey as defining the true boundaries of the location. We think that in the latter particular the decree went too far. The making and correction of surveys of public lands belongs to the political department of the government. Kirwan v. Murphy, 189 U. S. 35, 23 Sup. Ct. 599, 47 L. Ed. 698; Stoneroad v. Stoneroad, 158 U. S. 240, 15 Sup. Ct. 822, 39 L. Ed. 966; Murphy v. Tanner, 100 C. C. A. 125, 176 Fed. 537. It may well be that defendant's survey is correct, but the exterior boundaries of its property mark also the limits of a large amount of contiguous land which it does not own; and it is important that, while according to defendant the full measure of its location, the authoritative delimitation be•that of the public officials to whom such things are committed. An erroneous refusal to resurvey, based upon a misconception of defendant's rights, ought not to operate as a permanent bar to the discharge of the duty.

The decree should be modified, so that the dismissal of the complaint upon the merits be without prejudice to the right of the government to make a correct resurvey by marking the boundaries of Baca location No. 1 upon the ground according to the selection and location, the field notes and plat of 1876, and to contain the area specified, and when so made to require the defendant to adjust its enclosure accordingly.

As so modified, the decree is affirmed.